OPINION. Van Fossan, Judge-. The only question for our determination is whether or not the amounts placed by the petitioner in its reserves during the taxable years here in controversy constitute “unearned premiums” within the meaning of section 204 (b) (5) of the Kevenue Act of 1938 and the Internal Revenue Code. The pertinent provisions of the statutes are set forth in the margin.[1] As a prefatory note, it may be stated that there is no contention that the petitioner is a life insurance company, taxable as such under section 201 of the applicable act and the code. That question was decided adversely to the petitioner in proceedings before the Board of Tax Appeals, reported at 45 B. T. A. 365, and the petitioner does not now question the soundness of that decision. A brief review of the salient facts may be of aid in presenting the issue raised. The petitioner was organized to provide job irisurance for railway employees. The principal features of the polices were their retirement and discharge provisions, although some of. them also contained provisions for death and disability benefits. The policies were all noncancelable and were issued upon the level premium basis; that is, the insured could keep the polices in force simply by paying the premiums and the amount of the premiums could not be changed by the petitioner during the life of the policy. Both before and during the years here in question the petitioner maintained reserves set aside from the premiums collected which were held exclusively against its unsecured and contingent liabilities for either the death benefits or retirement benefits, payable under the policies in force during such years. On its returns for 1938 and 1939 the petitioner claimed 4 per cent of the mean of these reserves as deductions from gross income. These deductions were disallowed by the respondent. The respondent contends that as used in the statute the term “unearned premiums” means premiums collected for insurance in advance for periods which fall in the succeeding year; that such amounts have already been allowed the petitioner as deductions; and that it is not entitled to the further deductions it now seeks. The petitioner contends that, in addition to the amounts allowed by the respondent, there must also be included in unearned premiums that portion of the premiums over and above the actual costs of the insurance for the period for which the premiums are paid which represents the amount which must be set aside in order to meet the excess of claims in later years over the level premium then collected. The petitioner relies upon Massachusetts Protective Association, Inc. v. United States, 114 Fed. (2d) 304. In that case the petitioner engaged in the business oí writing level premium noncancelable health and accident polices. The taxpayer maintained a reserve “to meet the additional hazards on noncancellable health and accident policies due to the fact that the premiums must remain constant while the risk and cost inevitably increase.” In its returns the taxpayer sought to adjust its gross income by the net change during the year in its reserve under section 246 (b) (5) of the Revenue Act of 1926, which, for present purposes, is identical with the section with which we are here concerned. The court held the taxpayer entitled to the deduction it sought, saying that the addition to the reserve fund constituted a part of the “unearned premiums” within the meaning of the statute. In its opinion, the court said: In a non-cancellable health and accident policy the premium remains level throughout the life of the policy * * * even though the risk insured against increases with the age of the insured and even though the claim costs in the later years of the policy are, therefore, correspondingly greater than those of the earlier years. It follows, therefore, that in each of the earlier years of a non-cancellable policy the net annual premium collected exceeds the cost of the insurance for those years, while in each of the later years, the cost exceeds the net annual premium. Therefore, the additional reserve for non-cancellable health and accident policies is set up and used to supplement the net annual premiums of such policies in the later years to the extent that the prospective cost in those years exceeds the net annual premiums. Equitable Life Assurance Society v. Commissioner, 1935, 33 B. T. A. 708. • ****•• As long as these reserve funds must be held to provide for expected insurance liabilities in the future on these non-cancellable health and accident polices and are not to be used for the general purposes of the company, they are not “earned premiums” within the meaning of Congress and not includible in gross income. * * * The respondent seeks to distinguish the Massachusetts Protective Association, Inc. case, and other cases cited by the petitioner, from the case at bar on the ground that in those cases the company involved wrote contracts containing almost exclusively life or health and accident features, whereas the policies here were predominantly retirement policies. If we accept this as a correct statement, however, we do not think that such a distinction has substance. Whether or not the amounts in the reserve constitute unearned premiums is not to be determined solely by reference to the type of policies issued, but primarily by the nature of the reserve and the purpose for which it is maintained. We perceive no essential difference between the reserves maintained in the instant case and that maintained in the case cited above. The reserves maintained for the death benefits under the petitioner’s policies are clearly of the same type as those used in the Massachusetts Protective Association, Inc., case, supra. And we think the retirement reserves require similar treatment. One of the petitioner’s witnesses testified on cross-examination that when the contract is comparatively new the cost of insurance is much less than it is as the contract becomes older. Consequently, when the contract is new a portion of the premium is placed in the reserve in order to provide funds for the payment of the policies as they mature, since, at that time, the cost of the insurance will approximately equal the amount of premium collected. Another witness called by the petitioner as an expert gave testimony of similar import and testified that the maintenance of the reserves by the petitioner was essential in order for it to have sufficient funds to pay the claims as they matured. From all this we think it is sufficiently evident that the reserves maintained by the petitioner with respect to the retirement and life insurance features of its policies constituted unearned premiums within the meaning of section 204 (b) (5) and that the amounts placed therein during the taxable years are not a part of its gross income. We so hold. See Travelers Equitable Insurance Co., 22 B. T. A. 784; Swift & Co. Employes Benefit Association, 47 B. T. A. 1011; reversed on another point, 151 Fed. (2d) 625. It appears, however, that the petitioner has incorrectly computed the adjustment to which it is entitled under section 204 (b) (5). The section provides that in determining premiums earned there shall be deducted from gross premiums the return premiums and premiums paid for reinsurance. To the result so obtained there is to be added the unearned premiums on outstanding business at the end of the preceding taxable year and there is to be deducted the unearned premiums on outstanding business at the end of the taxable year. In other words, the petitioner is entitled to an adjustment measured by the net increase in the reserve account during the taxable year. The petitioner has not followed this procedure, however, but has deducted 4 per cent of the mean of the reserves. While such a deduction is provided for in computing the net income of life insurance companies (section 208 (a) (2)), there is no warrant for such action in the section here under consideration. However, all the facts necessary for the correct computation are in the record. In view of the abandonment of certain issues by the petitioner, a recomputation of the deficiencies will be required and the proper adjustment on account of unearned premiums can be made at that time. Decision will be entered, under Rule 50. SEC. 204. INSÜRANCE COMPANIES OTHER THAN LIFE OR MUTUAL. ******* (b) Definition of Income, etc. — In case of an insurance company subject to the tax imposed by this section— ******* (4) Underwriting income, — “ Underwriting income” means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred; (5) Premiums earned. — “Premiums earned on insurance contracts during the taxable year ” means an amount computed as follows : From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year. [[Image here]]